IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEANDER ESTERS, ) | 4:06CV3141 |
| ) | |
| Plaintiff, ) | |
| vs. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

Within the last year, I have twice reversed, and remanded for reconsideration, a decision of an administrative law judge (ALJ) because the judge relied on the testimony of a vocational expert (VE) that the claimant could work as a telephone solicitor or a cashier even though the claimant did not have the ability to do those jobs if the criteria found in the Dictionary of Occupational Titles (DOT), and social security rulings related to the DOT, were applied.[2] Despite the fact that Leander Esters (Esters) is not sympathetic, intellectual honesty requires that I reverse and remand this case for essentially the same reasons as I reversed those earlier cases.

In plain words, I will briefly try to explain, again, what is required in circumstances like these. At step-5, if the Medical-Vocational Guidelines do not

---

[1] According to the Social Security Administration's website, Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. See http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. Accordingly, he is substituted as the defendant.

[2] See Renner v. Astrue, No. 4:06CV3212 (D. Neb. Apr. 9, 2007) (Memorandum & Order, Filing 16 at CM/ECF pages 12-18); Flesner v. Barnhart, No. 4:06CV3010 (D. Neb. Aug. 31, 2006) (Memorandum & Order, Filing 13 at CM/ECF pages 13-19). The VE was the same in both cases. The VE who was involved in Renner and Flesner also testified in this case.

apply, the law requires a thorough and factually based explanation by the VE, followed by a reasoned opinion from the ALJ stating why the claimant can do the work of a telemarketer or cashier even though that person may not appear to fit the DOT criteria. Without such information, a judge cannot properly review the decision.

### *I. Background*

In 2003, Esters lost his job as a semi-skilled electronics technician (that he had held for 12 years) due to the fact that he medicated himself for pain by abusing cocaine and alcohol. (Tr. 432-433, 435, 460-463.) The ALJ found that Esters had not engaged in substantial gainful employment since that time. (Tr. 29 ¶ 2.)

The ALJ found that Esters suffered from osteoarthritis, a depressive disorder, history of cocaine and alcohol dependence and abuse, obesity, HIV-positive status, and insulin-dependent diabetes. (Tr. 29 ¶ 3.) These problems were "severe." The ALJ also found that Esters was deaf in one ear. (Tr. 29 ¶ 6.) Because of these problems, the ALJ found that Esters could not return to his past relevant work. (Tr. 29 ¶ 7.)

The ALJ ruled that the Medical-Vocational Guidelines did not apply since Esters suffered from "additional exertional and/or non-exertional limitations." (Tr. 28.)³ I presume that the ALJ did not apply the Guidelines because the judge found that Esters suffered from a "depressive disorder" that was "severe." In any event, had

---

³If non-exertional impairments significantly affect the claimant's residual functional capacity, the Medical-Vocational Guidelines are not controlling and may not be used to direct a conclusion of "not disabled." See, e.g., Thompson v. Bowen, 850 F.2d 346, 350 (8th Cir. 1998). These Guidelines presume adequate training and intellectual capacity, and evidence militating against these presumptions renders the Guidelines inapplicable. See, e.g., Simons v. Sullivan, 915 F.2d 1223, 1224 (8th Cir. 1990).

the Medical-Vocational Guidelines applied, the ALJ stated that Esters would not have been disabled. (Tr. 28.)[4]

Based upon the testimony of a VE (Tr. 28),[5] and Esters' residual functional capacity,[6] the ALJ believed that the claimant could find work in two categories of jobs. (Tr. 29 ¶ 12.) Those were working as a telephone solicitor and a cashier. As a consequence, the ALJ found that Esters was not disabled. (Tr. 30 ¶ 13.)

## *II. Analysis*

Esters' arguments may be summarized as follows: (1) the VE and the ALJ failed to properly apply the DOT or explain why the DOT was inapplicable; (2) the

---

[4]This was correct. Even though Esters had no transferrable skills from his prior semi-skilled work as an electronics technician, because Esters was a "younger individual" (age 45 to 49), and because Esters was a "high school graduate or more," the Guidelines would have directed a finding of "not disabled." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, Rule 201.20 (sedentary work) & Tbl. 2, Rule 202.21 (light work).

[5]Since the "validity [of the Medical-Vocational Guidelines] extends only as far as the assumptions implicit in each grid category[,]" the testimony of a VE is required in cases like this one to "'realistically appraise available work that can be performed by the claimant, given his existing abilities.'" Simons, 915 F.2d at 1224 (emphasis added) (quoting Talbott v. Bowen, 821 F.2d 511, 515 (8th Cir. 1987)).

[6]The ALJ found that Esters could lift up to 20 pounds on occasion and 10 pounds frequently; he could sit for 6 hours during a workday and stand or walk for 2 hours total, but Esters would be required to alternate positions every 30 minutes; Esters could bend, stoop, and twist on an occasional basis; Esters had moderate limitations in understanding instructions; Esters had moderate limitations in his ability to concentrate for prolonged periods of time; and Esters was able to follow simple instructions and respond to changes in work settings in a normal fashion. (Tr. 29 ¶ 6.)

ALJ failed to give proper weight to the opinions of treating doctors; and (3) the ALJ failed to properly evaluate the credibility of Esters under the Polaski[7] case. Because I will reverse and remand on the first issue and benefits may be ordered on remand as a result, I decline to reach arguments two and three.[8]

### *The Significance of the DOT*

To be entitled to disability benefits, Esters must establish a physical impairment lasting at least one year that prevents him from engaging in any gainful activity. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997). The Commissioner must determine: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. See id. Ordinarily, the Commissioner can rely on the testimony of a vocational expert to satisfy this burden. Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997).

---

[7]Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (subsequent history omitted).

[8]While I do not resolve these other arguments, I was not much impressed by them either. Nevertheless, and on remand, the ALJ would be well-advised to address the plaintiff's criticisms regarding these points when preparing the new opinion.

It is important to understand that the fifth step implicates questions of functional capacity <u>and</u> vocational capacity. The Social Security Administration describes the inquiry this way:

> 5.   Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her RFC [residual functional capacity] together with the "vocational factors" of age, education, and work experience? If so, we find that the individual is disabled. If not, we find that he or she is not disabled.

Social Security Ruling (SSR) 00-4P, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u> (Dec. 4, 2000), available at 2000 WL 1898704, at *1.

Keeping in mind that the Commissioner has the burden to show that the claimant can perform other work at step-5, it is at this point that the DOT takes on importance. This is because the Social Security Administration "rel[ies] <u>primarily</u> on the DOT (including its companion publication, the SCO) [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles][9] for information about the requirements of work in the national economy." SSR 00-4P, at 2000 WL 1898704, at *2 (emphasis added). In a broad sense, the DOT outlines the functional and vocational abilities a claimant must possess in order to be able to get and hold various jobs.

---

[9]The SCO is particularly important because it was developed at the request of the Social Security Administration to provide details about the demands of jobs listed in the DOT. <u>See</u> History of the SSA During the Johnson Administration 1963-1968, available at http://www.ssa.gov/history/ssa/lbjinter6.html.

As a result, and in most cases, the Social Security Administration requires the VE to follow the DOT. "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." Id. See also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003) ("[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications . . . ." ); Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997) ("When expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls.").

Based upon the foregoing, I start with the premise that in most cases the VE's testimony should be consistent with the DOT. If that testimony is inconsistent with the DOT, then, remembering that the Commissioner has the burden at step-5, the claimant is likely to win unless an exception, that I will next discuss, applies.

### *When the VE and the ALJ Are Allowed to Deviate from the DOT*

Despite the fact that the Social Security Administration primarily relies upon the DOT, the Administration also recognizes that a "VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4P, at 2000 WL 1898704, at *3. This variance is allowed. But, when a VE gives testimony that conflicts with the DOT, the ALJ must inquire about the conflict, obtain the reason for the conflict, resolve the conflict, and explain how and why the conflict was resolved. Id. at *4.

While the Social Security Administration recognizes that a VE may possess more refined knowledge about particular jobs, an ALJ may never rely upon the testimony of a "VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." Id. at *3. Thus, a VE may not change the regulatory definitions as they pertain to physical

requirements for job categories.[10]  Id.  Nor may a VE change the regulatory definitions for skill levels.[11]  Id.

### *The Discrepancy that Mattered:*
### *The Telephone Solicitor and Cashier Jobs and the*
### *Mismatch Between the Vocational Skills Required by the DOT*
### *and the Claimant's Vocational Skills*

Regarding the question of whether Esters had the vocational skills to do the two semi-skilled jobs that the VE and the ALJ said were available to him, and hoping for clarity, I emphasize the following in "bullet-point" format:

\*     The ALJ asked the VE whether there would be "any positions using transferrable skills from previous employment that could be used?" (Tr. 481.)  (In other words, even though the claimant could not continue to do his old job as an electronics technician, could the claimant find other jobs in the national economy based upon skills he learned from his previous work.)  Although the answer is nearly incoherent, I think the VE meant to say: "No." (Tr. 481.)[12]  If the VE intended something else, I have no idea what the answer meant.  In any event, there is no competent testimony from the VE that Esters had learned skills from previous work (which amounted to substantial gainful activity) that would allow him to work at the jobs the VE said he could perform.

---

[10]As in sedentary, light, medium, heavy, and very heavy.

[11]As in unskilled, semi-skilled, and skilled.

[12]The government apparently agrees. In its brief, the government states that the "vocational expert testified only that Plaintiff's skills as an electronics technician were not transferable (Tr. 481)." (Filing 12 at CM/ECF page 29.)

\*       The claimant had no recent education. His last schooling took place in 1978 when he attended approximately two years of college. (Tr. 108.) He has had no special job training since 1978.[13] (Tr. 108.)

\*       Given the limitations posited by the ALJ (Tr. 479-481), the VE said the claimant could work as a telephone solicitor or a cashier. (Tr. 482.)

\*       The VE said that both the telephone solicitor and the cashier jobs had a SVP[14] rating of at least 3 under the DOT. (Tr. 483, 485.) This meant both positions were, at a minimum, "semi-skilled." See SSR 00-4P, 2000 WL 1898704, at \*3 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, . . . semi-skilled work corresponds to an SVP of 3-4 . . . .").

\*       The Social Security Administration states that: "<u>Ability to perform . . . semiskilled work depends on</u> [1] the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level <u>or</u> [2] the

---

[13] High school education and above normally qualifies a person to do semi-skilled and skilled work. See 20 C.F.R. § 404.1564(b)(4). However, where, as here, one's education took place nearly 25 years before the onset of disability, "[f]ormal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work." 20 C.F.R. § 404.1564(b). The record is devoid of any discussion about how Esters' long-past schooling would have allowed him to do the semi-skilled jobs the ALJ and the VE said were available to him.

[14] SVP stands for "specific vocational preparation" and is typically expressed as a function of time. SSR 00-4P, 2000 WL 1898704, at \*3. An SVP-3 position normally requires more than 1 month, and up to 3 months, of specific vocational training. See Appendix C to the United States Department of Labor's Dictionary of Occupational Titles (DOT) (4th ed. 1991), available at http://www.occupationalinfo.org/appendxc_1.html#II.

presence of <u>recently</u> completed education which allows for direct entry into skilled or semiskilled work." SSR 83-10, <u>Program Policy Statement: Titles II and XVI: Determining Capability to do Other Work—The Medical-Vocational Rules of Appendix 2</u> (1983), <u>available at</u> 1983 WL 31251, at *3 (S.S.A.) (emphasis and brackets added).

  *  Since the claimant had no acquired skills that could be transferred, and there is no evidence in the record of <u>recent</u> education that would allow for entry into semi-skilled work, there was an apparent mismatch between the vocational skills needed to do the job of telephone solicitor and cashier as laid out in the DOT and the testimony of the VE. In other words, according to the DOT and the related SVP level of 3, Esters lacked the vocational ability to do either of the jobs the VE said he could perform.

  *  Despite the mismatch between the VE's testimony and the DOT on the question of Esters' vocational skills, the ALJ relied, at step-5, upon the VE's testimony to find that Esters was not disabled without any explanation of the inconsistency. (Tr. 28, 29 ¶ 12.) On the face of it, this was error. <u>See</u>, <u>e.g.</u>, <u>Steward v. Barnhart</u>, 44 Fed. Appx. 151, 2002 WL 1791513 (9th Cir. 2002) (ALJ could not rely on testimony of VE that social security disability claimant lacking transferable skills could perform certain semi-skilled jobs at "SVP-3" level because they were entry-level and required no transferable skills, inasmuch as VE's testimony was inconsistent with regulatory definitions of "SVP-3" and "semi-skilled") (unpublished).

### *The Lack of Explanation for the Vocational Skills Mismatch*

  The VE did not explain in any detail why he thought Esters had the vocational skills to do the work of a telephone solicitor or a cashier when the DOT criteria, and the companion SVP-3 rating, were factored into his opinion. The two brief attempts

at an explanation were insufficient.  That is, I cannot review them because they lack any detail upon which to make a reasoned evaluation.

First, and despite the SVP-3 rating, the VE said that Esters could do the job of a telephone solicitor because he had previously held similar jobs.  (Tr. 478-79.)  The VE added that Esters "worked [the telemarketing positions] long enough to learn the job."  (Tr. 479.)  The difficulty with this conclusion is that the VE did not explain why he thought this prior job experience provided Esters with the necessary job skills in light of the VE's related testimony that the past telemarketing employment did not meet the "substantial, gainful activity" threshold.[15]  (Tr. 478-479.)  Moreover, the undisputed evidence indicated that Esters worked at the telemarketing jobs for less than three months, that Esters worked only part-time, and that he was not paid for some of the work because one of the vendors became insolvent.[16]  (Tr. 433-434.)  Perhaps there is a good explanation for the VE's conclusion that Esters learned what he needed to know from his prior, albeit brief, employment (or otherwise), but if such an explanation exists, the VE did not provide it.

Second, the VE said that "SVP 3s almost categorically, across the board, are entry level and would [require only the ability to follow] simple [instructions]."  (Tr.

---

[15]When trying to decide what work the claimant may be expected to do in the future, if the prior work did not count as "substantial gainful activity," that is, the claimant "worked only 'off-and-on' or for brief periods of time during the [last] 15-year period, we generally consider that these do not apply."  20 C.F.R. § 404.1565(a); 20 C.F.R. § 416.965(a).

[16]"The claimant is in the best position to describe just what he or she did in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc.  Neither an occupational title by itself nor a skeleton description is sufficient."  SSR 82-41, Program Policy Statement: Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979 (1982), available at 1982 WL 31389, at *4 (S.S.A.).

484.) This was based upon the VE's "experience" as "opposed to . . . how the DOT would rank it[.]" (Tr. 484.) In essence, the VE testified that, despite the fact that the DOT (and related regulatory criteria) required transferrable skills or specific recent vocational training as a condition precedent to working as a telephone solicitor or a cashier (in other words, the ability to do semi-skilled work), anyone who could follow simple instructions (that is, who could perform unskilled work) had the ability to do the work of certain telephone solicitors or cashiers.[17]

Notwithstanding the DOT and the companion SVP rating of 3, the VE's testimony may be correct that some specific telephone solicitor or cashier jobs are unskilled positions. But there is no foundation in this record to support such conclusion save for a vague and unspecific reference to the VE's "experience."[18]

### *The Discrepancy that Did Not Matter:*
### *The Cashier Jobs and the*
### *Mismatch Between the Ability to Stand Required by the DOT*
### *and the Claimant's Ability to Stand*

There was another dispute regarding the DOT and the requirement that workers stand when they are doing "light" work. On cross-examination, the VE testified that "many" cashier positions are classified as "light" positions. (Tr. 487-88.) The VE also stated that the "strict classification of light" duty means that a person must be

---

[17] In contrast with the VE's testimony, the Social Security Administration has stated that: "A skill [within the ambit of skilled or semi-skilled occupations] is knowledge of a work activity that requires the exercise of <u>significant judgment</u> that goes beyond the carrying out of simple job duties . . . ." SSR 00-4P, 2000 WL 1898704, at *3 (emphasis added).

[18] For the purposes of remand, it bears repeating that the VE must accept the Social Security Administration's definitions regarding skill levels.

able to stand "at least six hours on the feet." (Tr. 488.)[19] The VE also stated that the DOT, as it pertained to "light" cashier positions, stipulated that "under normal circumstances" workers were "on their feet for at least six hours." (Tr. 489.)

Since the ALJ's hypothetical question assumed that the claimant could stand for only two hours (Tr. 480), the claimant's able lawyer asked the VE "if the total standing was limited to two hours, do you really believe that the light cashier positions with the sit, stand option would accommodate that [limitation]?" (Tr. 485.) The VE then gave a series of answers that brought more confusion than clarity to the situation. Because that issue may arise again on remand, I briefly address it here.

While admitting that "many" cashier positions are in the "light" category," thus requiring an ability to stand for six hours, the VE appeared to defend himself by attacking the DOT and the meaning of "light work." The VE seemed to reject a "strict classification of light [duty,]" observed that the DOT did not address a "sit, stand" option, and asserted that the DOT was "pretty antiquated." (Tr. 487-488.)

To the extent that the VE intended by this testimony to reject the DOT and related regulatory criteria regarding the physical demands of "light work," the VE violated SSR 00-4P, 2000 WL 1898704, at *3 ("Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling. For example, if all available evidence (including VE testimony) establishes that the exertional demands

---

[19]According to the Eighth Circuit Court of Appeals, "light exertional work . . . generally requires a person to be able to stand/walk for six hours in an eight-hour day." Charles v. Barnhart, 375 F.3d 777, 782 n.4 (8th Cir. 2004). See also 20 C.F.R. § 404.1567(b) (defining "light work" and stating that "a job is in this category when it requires a good deal of walking or standing, or when it involves pushing and pulling of arm or leg controls.").

of an occupation meet the regulatory definition of "medium" work (20 C.F.R. 404.1567 and 416.967), the adjudicator may not rely on VE testimony that the occupation is 'light' work."). In simple parlance, a VE cannot redefine what "light work" means. However, when further questioned by the ALJ, the VE seemingly backed away from his criticism of the DOT and the definition of "light work." (Tr. 489-90.) Instead, the VE told the ALJ that there were several thousand "cashier" jobs that fit into the "sedentary" category.[20] (Tr. 489.) In other words, while the DOT may list most cashier jobs as falling within the "light" category, there may be some (in this case, apparently thousands of) cashier jobs that fall into the sedentary category.[21] Therefore, there was nothing improper about the VE's testimony that Esters could physically do the work of a sedentary cashier.[22]

### III. Conclusion

This case must be remanded for another hearing and another opinion. On this record, the evidence is insufficient to find that Esters had the vocational preparation necessary to do the job of a telephone solicitor or a cashier. Accordingly,

IT IS ORDERED that the decision of the Commissioner denying benefits is reversed and this case is remanded to the Commissioner for further proceedings consistent with this opinion. A separate judgment will be entered.

---

[20]"Jobs are sedentary if walking and standing are required occasionally. . . ." 20 C.F.R. § 404.1567(a).

[21]The "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4P, 2000 WL 1898704, at *3.

[22]That, of course, does not cure the VE's error regarding Esters' lack of vocational preparation discussed earlier.

April 24, 2007.                              BY THE COURT:
                                             s/ *Richard G. Kopf*
                                             United States District Judge